**O**

# United States District Court
# Central District of California

| | |
|---|---|
| MORRIS REESE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>T-MOBILE USA, INC.,<br><br>　　　　　　Defendant. | Case No. 2:13-cv-05199-ODW(PLAx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [21]** |

## I.   INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent.  But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular service providers.  Finding this delay unfair, the service providers, including Defendant T-Mobile USA, Inc., all individually filed motions for summary judgment against Reese based on the defense of laches.  Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit.  Because none of Reese's explanations excuse his delay, the Court **GRANTS** T-Mobile's Motion for Summary Judgment.  (ECF No. 21.)

## II. FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005. (SUF ¶ 2.) The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002. (*Id.* ¶ 47.) The '150 Patent expired in 2011, two years prior to Reese's suit against T-Mobile. (*Id.* ¶ 30.)

On April 13, 2005, Reese sent a letter to T-Mobile Communications, Inc. and T-Mobile Wireless asserting that it infringed the '150 Patent with its call-waiting ID service. (SUF ¶¶ 4–5; Mot. Ex. 1.) The April 13, 2005 letter informed T-Mobile of the '150 Patent, and directed T-Mobile in particular to claims 25 and 36—which Reese indicated were "applicable to [T-Mobile] customers subscribed to 'Call Waiting ID' service.'" (Mot. Ex 1.) Reese asserted that for T-Mobile's to continue to provide that service to its customers, T-Mobile required a license from Reese. (*Id.*)

T-Mobile responded on April 22, 2005, explaining that it was neither a developer nor manufacturer of wireless telecommunications devices, and thus believed it did not infringe the '150 Patent. (SUF ¶ 8; Mot. Ex. 2.) Reese responded on June 6, 2005, requesting to know "within the next two weeks as to how [T-Mobile] would like to proceed with this matter." (SUF ¶ 9; Mot. Ex. 3.) Reese neither informed T-Mobile that it would be sued if it did not take a license, nor asserted that T-Mobile's status was sufficient to avoid infringement. (SUF ¶ 10–11: Mot. Ex. 3.)

On May 9, 2006, Reese wrote T-Mobile a second letter. (SUF ¶ 20; Mot. Ex. 4.) Again, Reese stated that T-Mobile needed to discuss licensing with Reese, and again he did not inform T-Mobile that it would be sued if it did not take a license. (SUF ¶ 21, Mot. Ex. 4.) On May 15, 2006 T-Mobile responded, reminding Reese that it was neither a developer nor manufacturer of wireless telecommunications devices. (SUF ¶¶ 24–25.) There is no evidence that Reese contacted T-Mobile again during the subsequent eight years. (SUF ¶ 21).

/ / /

/ / /

Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1] (SUF ¶¶ 40–42.) Four of these suits involved the '150 Patent or its immediate parent. Reese was represented by counsel for all of these suits, with the exception of *Reese v. T-Mobile Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se. (Reese Decl. ¶ 33.)

From 2000 to 2008, Reese experienced serious heath problems. Reese began dialysis treatments for renal failure in 2000. (*Id.* ¶ 29.) Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008. (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against T-Mobile—along with Sprint Nextel Corp., TracFone Wireless, Inc., United States Cellular Corporation, AT&T Mobility LLC, and Verizon. (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.) The Court severed the case on July 15, 2013. (*Id.* ECF No. 18.) Reese refiled a separate complaint against T-Mobile on July 18, 2013. (ECF No. 1.)

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

In the interest of fairness, those who are granted a monopoly under the patent system have an obligation to enforce their rights in a timely manner. A defendant in a patent-infringement suit may raise the equitable defense of laches when the plaintiff is dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992). In patent cases, laches bars recovery of damages for any infringement that occurs prior to the filing of suit. *Id.* at 1040. A laches defense is a matter within the trial court's discretion based on consideration of all of the facts in a particular case. *Id.* at 1040–41.

To prevail on a laches defense, a defendant must prove by a preponderance of the evidence that: (1) the plaintiff knew or should have known of the infringement and with that knowledge delayed filing suit for an unreasonable and inexcusable length of time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Where the delay in filing the suit exceeds six years, the court will presume the delay

was unreasonable and prejudicial to the defendant. 35 U.S.C. § 286; *Hearing*, 600 F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.) The burden is then on the plaintiff to prove the existence and reasonableness of an excuse for the delay, and to show a lack of prejudice to the infringer. *Hearing*, 600 F.3d at 1375.

Determining the length of the delay involves two sub-issues: when the delay period begins to run and when the delay period ends. The delay period begins to run from the time that the plaintiff had actual or constructive knowledge of the alleged infringing activities. *Aukerman*, 960 F.2d at 1032; *Hearing Components*, 600 F.3d at 1375. But the plaintiff need not be certain that the conduct is infringing; time starts to run when the patentee is aware of sufficient facts to form a reasonable belief that some infringing conduct exists. *Aukerman,* 960 F.2d at 1032. The delay period ends no later than the date of the filing of suit. (*Id.*)

The reasonableness of the delay is not determined by application of mechanical rules. *Aukerman*, 960 F.2d at 1032. Rather, the reasonableness of the delay depends on the particular facts and circumstances of the individual case. *Id.* The court must consider and weigh any justification offered by the plaintiff for its delay. *Id.* at 1033.

Prejudice to the defendant may be either economic or evidentiary. *Id.* Economic prejudice arises when a defendant incurs damages that would likely have been prevented by earlier suit. *See id.* Economic prejudice is not merely damages attributable to patent infringement liability. *Id.* at 1033. Evidentiary or "defense" prejudice arises when the defendant can no longer present a full and fair defense on the merits due to the plaintiff's delay. *Id.* at 1032*.* This inability may be occasioned by "the loss of records, the death of a witness, [or] the unreliability of memories of long past events." *Id.*

T-Mobile asserts that it is entitled to a laches presumption because of Reese's eight-year delay in filing suit. Reese contends that T-Mobile is not entitled to a laches presumption because there is no evidence that the delay period, for laches purposes, began to run in 2005. In the alternative, Reese argues that he can rebut the laches

presumption because his delay was reasonable and resulted in no prejudice to T-Mobile. The Court considers each in turn.

**A. Laches Presumption**

T-Mobile asserts that it is entitled to a presumption that Reese's delay in filing suit was unreasonable and prejudicial to T-Mobile. In support of this assertion, T-Mobile argues that Reese knew or should have known of T-Mobile's alleged infringement as of April 13, 2005, when Reese sent the infringement-allegation letter to T-Mobile. Reese then failed to formally assert his infringement claims against T-Mobile until 2013. T-Mobile asserts that because this amounts to a more than eight-year delay, it is entitled to the laches presumption under § 286.

Reese argues that the delay period did not begin to run on April 13, 2005 because his letter to T-Mobile was not an infringement allegation, but merely an invitation for T-Mobile to open licensing discussions with Reese. Thus, Reese contends, there is no evidence that Reese actually knew of T-Mobile's infringement in 2005. This argument is contrary to the plain text of the letter. Reese states in his letter to T-Mobile that in order for it to continue to provide call-waiting-ID services, T-Mobile "requires a license from Mr. Reese." (Mot. Ex. 1.) It strains credibility to argue that a patent owner who demands that a company take a license can somehow not know of his infringement claim on that patent.

Moreover, Federal Circuit precedent establishes that knowledge as to whether the device *actually* infringes is not required to establish laches. A good-faith belief is sufficient. *Aukerman,* 960 F.2d at 1032. Reese clearly believed that T-Mobile's call-waiting-ID services infringed the '150 Patent—evidenced by his attempt to open licensing negotiations in 2005. Accordingly, the Court finds that Reese had actual knowledge of T-Mobile's infringement at least on April 13, 2005. Because Reese failed to formally assert his rights until 2013, T-Mobile is entitled to a presumption of laches. Thus, Reese "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the

delay was reasonable or that the movant did not suffer prejudice caused by the wait." *Id.* at 1038.

**B. Reasonableness of the delay**

Reese argues that even if he had knowledge of T-Mobile's infringement in 2005, his eight-year delay in filing suit was reasonable. Reese proffers two justifications for his delay: his involvement in other litigation and his worsening medical condition. Reese also claims he is entitled to leniency because he was representing himself for some of the litigation. The Court addresses each in turn.

First, Reese argues that his eight-year delay in filing suit against T-Mobile was reasonable because he was extensively involved in other litigation. On August 31, 2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony, Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate patent of the '150 Patent). (Reese Decl. ¶ 17.) That suit continued through January 31, 2007. (*Id.* ¶ 18.) Four months later, Reese sued land-line telephone service providers Southwestern Bell Telephone Company, GTE Southwest, and their parent companies AT&T and T-Mobile, for infringement of the '150 Patent. (*Id.* ¶ 21.) Reese voluntarily dismissed AT&T and T-Mobile from that action, but later brought a separate suit against the same companies that lasted from March 2011 to December 21, 2012. (*Id.* ¶¶ 24, 33.) Approximately five months later, Reese filed this action against T-Mobile, again alleging infringement of the '150 Patent.

Involvement in other enforcement litigation may, in some circumstances, excuse a plaintiff's delay in suing an alleged infringer. But the Federal Circuit has held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying others—absent other factors—is a strategic decision that does not excuse or otherwise toll the presumption period for laches. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of

(1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation. Although there is no rigid requirement that such notice be given, "[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice." *Hall*, 93 F.3d at 1554 (internal quotations omitted); *accord Aukerman*, 960 F.2d at 1039.

Here, T-Mobile received no communications from Reese for seven years after the infringement-allegation letters of 2005 and 2006. There is no evidence that T-Mobile had any notice—from Reese or otherwise—that Reese intended to sue it after the close of his other litigation. Reese's seven-year silence and eight-year inaction made it reasonable for T-Mobile to believe that Reese had declined to assert his rights against T-Mobile. Where there is prior contact between the plaintiff and the accused infringer—especially when the contact is in the form of an infringement accusation—notice becomes essential to a finding of excusable delay. A clear indication that the plaintiff intends to enforce its rights against the alleged infringer after the conclusion of the other litigation allows the accused infringer an opportunity to take steps to protect itself from liability. *Accord Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996). Here, T-Mobile had no such opportunity.

The equivocal nature of Reese's contacts with T-Mobile failed to give adequate notice that it may be subject to suit in the future. The equities dictate that notice of intent to pursue infringement claims against T-Mobile at the conclusion of Reese's other litigation was required in this case. Accordingly, Reese's choice to strategically pursue other lawsuits while ignoring T-Mobile is legally insufficient to overcome the presumption of unreasonable delay.

Second, Reese argues that his delay in bringing suit was reasonable because of the serious health problems he experienced from 2000 to 2008. He argues that his ability to sue T-Mobile was significantly restricted because of his frequent dialysis treatments and eventual kidney transplant.

1 Generally, illness is not recognized as an adequate excuse for a plaintiff's delay in bringing suit. And although Reese certainly was afflicted with a debilitating illness, Reese's assertion that his delay was necessary because of his failing health is directly contradicted by his previous excuse—his extensive involvement in other litigation. Notwithstanding his poor health, Reese was able to file multiple suits against other infringers during his illness and litigate them to conclusion. (Reese Decl. ¶¶ 17–33.) The fact that Reese was able to competently litigate several other lawsuits undermines his contention that he was physically unable to pursue lawsuits against T-Mobile.

Moreover, Reese ignores the five years that have passed since his kidney transplant. Even after his health issues ended in 2008, Reese did and said nothing until he filed suit in 2013. Reese does not assert that his health issues continued after 2008. Thus, at a minimum Reese had three years after the resolution of his health issues before laches would be presumed.

Finally, an inability to find willing counsel, another of Reese's excuses, is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit. *Hall*, 93 F.3d at 1554. Additionally, Reese's litigation history shows that he has used multiple counsel at various times, and was fully capable of engaging in different litigation activities with different counsel—or by himself.

**C. Prejudice**

A plaintiff can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the defendant. *Aukerman*, 960 F.2d 1030. Reese contends that his delay did not materially prejudice T-Mobile. But Reese attempts to prove this lack of prejudice by asserting that *T-Mobile* has failed to demonstrate that it has been prejudiced by Reese's delay—thus placing the burden of production on T-Mobile. This is incorrect; the *Auckerman* presumption places the burden of production on the plaintiff. *Hall*, 93 F.3d at 1553. Thus it is Reese's burden to come forward with affirmative evidence of a lack of prejudice. T-Mobile may remain

"utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

      1. *Evidentiary prejudice*

Reese has provided no affirmative evidence that T-Mobile will not suffer evidentiary prejudice from his eight-year delay. In contrast, T-Mobile argues that they will suffer evidentiary prejudice because Reese is unable to account for evidence relevant to T-Mobile's defense of this action. Reese does not dispute that he no longer has a complete of set documents produced in or generated during the course of his prior litigation relating to '150 Patent. (SUF ¶ 58–60; Mot. Exs. 20–21.) To date, Reese has been unable to produce all the documents that existed for the *US West*, *Northern Telecom*, *Aastra*, *Samsung*, or *Verizon California* cases. Additionally, Reese does not dispute that he no longer has a complete set of licensing agreements for the '150 or related patents. (SUF ¶¶ 48–49; Mot. Exs. 17–18.) Reese's prior counsel also admitted to destroying 68 folders of documents related to Reese's prior litigation— some of which directly involved the '150 Patent. (SUF ¶ 59; Wong Decl. ¶ 23, Ex. 21.) Although the contents of the documents are unknown, a chart provided by prior counsel shows a variety of potentially responsive documents including "current settlements" and "Reese/T-Mobile Issue." (Mot. Ex. 21–22.)

The loss of these documents is problematic for two major reasons. First, because the licenses—many of which were given to cell-phone-handset manufacturers—may protect T-Mobile from Reese's infringement allegations. If Reese licensed customers to use handsets that subscribe to T-Mobile's services or network, that license may protect T-Mobile from infringement claims. Second, those licenses are essential to allow T-Mobile to propose a reasonable-royalty rate for any potential damages involving unlicensed products. In the absence of this evidence, T-Mobile's opportunity to defend itself against Reese's infringement claim is somewhat less than "full and fair."

/ / /

1  Reese attempts to argue that T-Mobile should endeavor to reconstruct the
2  evidence for its defense, which he alleges should still be available from some other
3  sources.  But Reese presents no authority for his novel proposition that T-Mobile is
4  required to attempt to gather whatever evidence remains and hope that it works for
5  their defense.  This burden lies with Reese, not T-Mobile.  Consequently, Reese has
6  not met his burden to come forward with affirmative evidence of a lack of evidentiary
7  prejudice.

2.  *Economic prejudice*

9  Reese also argues that T-Mobile has failed to prove that it has been
10 economically prejudiced by Reese's delay in filing.  But again, it is not T-Mobile's
11 burden, as Reese argues, to demonstrate economic prejudice in light of the laches
12 presumption.  Rather, Reese has the burden of proving that T-Mobile has not been
13 economically prejudiced by Reese's delay—which he does not attempt to do in his
14 Opposition.  Reese merely attacks T-Mobile's assertions of economic prejudice as
15 "largely conclusory and lack[ing] any proof."  (Opp'n 15.)  This is insufficient.
16 Accordingly, Reese has failed to adduce any affirmative evidence that T-Mobile has
17 not been economically prejudiced by Reese's eight-year delay in filing suit.
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V. CONCLUSION

Based on the undisputed facts, T-Mobile is entitled to the presumption of laches. Reese has failed to prove that his delay was reasonable, or that T-Mobile suffered no prejudice as a result of the delay. Accordingly, for the reasons discussed above, T-Mobile's Motion for Summary Judgment is **GRANTED**. (ECF No. 21.) A Judgment will issue. The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**